IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ADRIAN CAMPBELL<br>a/k/a KEVIN LION | CRIMINAL CASE NO.<br>1:11-cr-00460-AT-RGV |

## ORDER FOR SERVICE OF MAGISTRATE JUDGE'S
## FINAL REPORT, RECOMMENDATION, AND ORDER

Attached is the Final Report, Recommendation, and Order of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and Local Criminal Rule 59(2)(a)-(b). Let the same be filed and a copy, with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for

review by the District Court. Failure to object to this Report and Recommendation waives a party's right to review. Fed. R. Crim. P. 59(b)(2).

Pursuant to Title 18, U.S.C. § 3161(h)(1)(D) and (H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.** The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED** and **DIRECTED**, this 19th day of April, 2012.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CRIMINAL CASE NO. |
| v. | 1:11-cr-00460-AT-RGV |
| | |
| ADRIAN CAMPBELL a/k/a KEVIN LION | |

**MAGISTRATE JUDGE'S FINAL REPORT,
<u>RECOMMENDATION, AND ORDER</u>**

Defendant, Adrian Campbell, also known as Kevin Lion ("defendant"), is charged in a three-count indictment with criminal offenses related to the illegal possession and attempted international shipping of a firearm in violation of 18 U.S.C. §§ 554, 922(e), and 922(g)(1).[1] [Doc. 1].[2] Pending before the Court are defendant's motion to exclude latent fingerprint identification evidence and request for a <u>Daubert</u>[3] hearing, [Doc. 14], which the government opposes, [Doc. 41], and defendant's *pro se* motions to dismiss, [Docs. 34 & 36], to rescind his not guilty plea,

---

[1] The indictment also contains a forfeiture provision pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). <u>See</u> [Doc. 1 at 2-3].

[2] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[3] <u>See</u> <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).

[Doc. 37], and to summon his accuser, [Doc. 39]. For the following reasons, defendant's motion to rescind his not guilty plea, [Doc. 37], and motion to summon his accuser, [Doc. 39], are **DENIED**, and it is hereby **RECOMMENDED** that defendant's motions to dismiss, [Docs. 34 & 36], and his motion to exclude latent fingerprint identification evidence and request for a Daubert hearing, [Doc. 14], be **DENIED**.

## I. DISCUSSION

**A.	Defendant's Motion to Exclude Latent Fingerprint Identification Evidence and Request for a Daubert Hearing, [Doc. 14]**

Defendant, a convicted felon, is charged in a three-count indictment, arising from a single transaction in which he allegedly illegally possessed and attempted to ship a firearm that was concealed in a DVD player to a Canadian recipient without providing the required notice to the common carrier used for shipment. [Doc. 1]. The government has advised defendant that it intends to present evidence regarding the identification of latent fingerprints that were lifted from the subject DVD player. See [Doc. 14 at 2; Doc. 41 at 1]. Specifically, the government advised defendant that it intends to call Bureau of Alcohol, Tobacco, and Firearms ("ATF") Senior Fingerprint Specialist Larry Hankerson ("Hankerson") as an expert witness. Thereafter, defendant filed the pending motion to exclude the fingerprint

2

identification evidence and requested a Daubert hearing, [Doc. 14], which the government opposes, [Doc. 41].[4]

The government expects Hankerson to testify regarding the analysis, comparison, and identification of fingerprints based on his experience and specialized training. [Doc. 41 at 3]. Specifically, Hankerson, a Senior Fingerprint Specialist with the ATF, is a member of the International Association for Identification, has worked for more than 40 years in the field of latent fingerprint identification, has received training in fingerprint identification since 1966, has been certified by the International Association for Identification as a certified latent print examiner with his most recent re-certification being in 2010, and has testified as an expert witness in over 360 cases in state and federal courts. [Doc. 41-2 at 1-5].

---

[4] At the time defendant filed the instant motion, [Doc. 14], he was represented by counsel. Defendant, however, subsequently requested to discharge his attorney and represent himself, and after a hearing pursuant to Faretta v. California, 422 U.S. 806 (1975), the Court granted defendant's request and directed him to notify the Court as to whether he intended to maintain or withdraw the present motion, see [Doc. 35], but he failed to do so, see [Doc. 40 at 1]. Because defendant did not withdraw the motion to exclude fingerprint evidence, the Court directed the government to file a written response by March 20, 2012, see [id. at 1-2], and advised defendant that he "may file a reply to the government's response on or before April 6, 2012," see [id. at 2]. The government filed a timely response, [Doc. 41], to which defendant has not replied and the time to do so has passed. Thus, the instant motion to exclude fingerprint evidence and request for a Daubert hearing is now ripe for ruling.

Based on his specialized training and experience, Hankerson will testify regarding the method for latent fingerprint examination, including the specific examination method used in this case. See [Doc. 41-3 at 1-3]. For example, his testimony will explain that he examined latent print images recovered from the subject DVD player which "revealed a total of four latent prints that were suitable for identification." [Id. at 1]. In his report, Hankerson explains in relevant part:

> The latent prints were compared with the inked fingerprints of [defendant] and the elimination inked fingerprints of Jason Samuel Kauffmann. The scientific methodology that I used when performing this examination involved four main phases: analysis, comparison, evaluation and verification (ACE-V). Although some practitioners in the fingerprint expert community use slightly different technology to describe the unique approach with each phase, the concepts are exactly the same.

[Id.]. Hankerson then reports that he analyzed "all variables influencing the friction ridge impressions in question," that he "determined that there was a sufficient quality and quantity of friction ridge detail in the fingerprints to individualize them," and that had he "concluded that the fingerprints lacked sufficient quality and quantity of detail, then the examination would have stopped there." [Id.].

Hankerson explains that the next phase of his examination was the comparison phase, which consisted of three separate levels, in which he first performed a macroscopic examination of the fingerprints "to look for general agreement in the flow of the friction ridges and the pattern type." [Id. at 1]. At the

4

second level, Hankerson performed a microscopic comparison using a magnifying loop to compare certain characteristics of the friction ridges and their relative positions to one another in both fingerprints, and at the third level, which is performed concurrently with the second level, Hankerson looked at the "finer details present in the fingerprint" such as the "shapes and widths of the ridges, pore structure (when visible), the edges of the ridges, scars, incipient ridges and other features that [he] considered to be unique to fingerprints." [Id. at 1-2].

After completing the comparison phase, Hankerson performed the evaluation phase at which time he reached his conclusion as to the identity of the fingerprints. [Id. at 2]. In particular, Hankerson concluded that two of the four latent fingerprints lifted from the subject DVD player matched defendant's right ring finger and left middle finger. [Doc. 41-1 at 1]. The final phase of Hankerson's examination was verification, which he explains in relevant part as follows:

> A verification of the identification was conducted by a second examiner. This was performed completely independent of my examination which means that the second examiner had no knowledge of the individualizing features I used to make my conclusion. The second examiner proceeded through the three phases of the identification process listed above and came to his/her own conclusion as to the identification of the fingerprints. The second examination was performed to verify my conclusion, not to verify the individualizing features that I used to make my examination.

5

[Doc. 41-3 at 2]. Hankerson concluded his report by explaining that "[a]ll examinations are consistent with professional standards and standard approaches routinely used in all ATF laboratories." [Id. at 3].

Defendant contends that the expert testimony at issue is not admissible under Federal Rule of Evidence 702 or Daubert because the "'science' of fingerprint identification has not been subject to adequate reliability testing" and because "the proffered evidence in this case is unreliable." [Doc. 14 at 2]. In response, the government contends that the proposed expert testimony is admissible without the need for a Daubert hearing, "[c]onsidering the reliability and relevance of the proposed expert testimony and the controlling legal authority." [Doc. 41 at 3]. The Court will address each of the parties' arguments.

1.   *Standard*

"'Federal Rule of Evidence 702, as explained by the Supreme Court in [Daubert] and its progeny, controls determinations regarding the admissibility of expert testimony.'" United States v. Diaz, No. 07-20398-CR, 2008 WL 906725, at *1 (S.D. Fla. Mar. 28, 2008) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (footnote and citation omitted)). Specifically, Rule 702 provides that a witness who has been qualified as an expert based on knowledge,

skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see also Oliver v. Orange Cnty., Fla., No. 11–13007, 2012 WL 265926, at *2 (11th Cir. Jan. 31, 2012) (per curiam) (unpublished). "'The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or defendant in a civil suit, or the government or the accused in a criminal case.'" Diaz, 2008 WL 906725, at *2 (quoting United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc)); see also Mcgarity v. FM Carriers, Inc., No. CV410–130, 2012 WL 1028593, at *4 (S.D. Ga. Mar. 26, 2012).

In Daubert, the Supreme Court "emphasized the district court's 'gatekeeping' role to ensure that scientific testimony is relevant and reliable before it is admitted as evidence." Sciele Pharma, Inc. v. Brookstone Pharm., LLC, Civil Action No. 1:09–CV–3283–JEC, 2011 WL 3844891, at *6 (N.D. Ga. Aug. 30, 2011) (citation

7

omitted) (quoting Daubert, 509 U.S. at 589-90); see also Feliciano v. City of Miami Beach, No. 10–23139–CIV–LENARD/O'SULLIVAN, 2012 WL 591304, at *2 (S.D. Fla. Feb. 22, 2012). "In determining the admissibility of expert testimony under Rule 702, district courts must consider whether the expert can testify competently on the areas he intends to discuss, whether the expert's methodology is sufficiently reliable, and whether the expert's testimony, through the application of his scientific, technical, or specialized expertise, will assist the trier of fact to understand the evidence." United States v. Jayyousi, 657 F.3d 1085, 1106 (11th Cir. 2011) (citation omitted). In addition, the Daubert opinion identifies several factors that may be relevant in determining the admissibility of expert testimony under Rule 702:

> (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

Adams v. Lab. Corp. of Am., No. 1:10–cv–3309–WSD, 2012 WL 370262, at *9 (N.D. Ga. Feb. 3, 2012) (citing Daubert, 509 U.S. at 593-94).

"The *Daubert* inquiry is a flexible one, giving district courts great latitude in determining which of the *Daubert* factors, if any, are appropriate in assessing the

admissibility of expert testimony in a particular case." Diaz, 2008 WL 906725, at *2 (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) ("noting that '*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.'")); see also Adams, 2012 WL 370262, at *9. "[W]hether the *Daubert* factors are even pertinent to assessing reliability in a given case will 'depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" United States v. Reddy, Criminal Action File No. 1:09–CR–0483–ODE/AJB, 2011 WL 2493529, at *11 (N.D. Ga. Feb. 24, 2011), adopted by 2011 WL 2518737, at *9 (N.D. Ga. June 23, 2011) (second alteration in original) (quoting Kumho Tire Co., 526 U.S. at 153 (internal marks omitted)); see also United States v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005). Therefore, the court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co., 526 U.S. at 152.[5]

Additionally, "*Daubert* hearings are not required." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1113 (11th Cir. 2005) (citation and internal marks omitted); see also United States v. Kyler, 429 F. App'x 828, 830

---

[5] In fact, "[t]he Eleventh Circuit has noted that 'there are instances in which a district court may determine the reliability prong under *Daubert* based primarily upon an expert's experience and general knowledge in the field.'" Reddy, 2011 WL 2493529, at *11 n.16 (citing Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1336 (11th Cir. 2010) (citation omitted)).

9

(11th Cir. 2011) (per curiam) (unpublished) (citation omitted) ("[A] formal *Daubert* hearing is not required in every case."). Rather, "[t]he decision of whether to conduct a *Daubert* hearing in a particular case is discretionary." Abrams v. Ciba Specialty Chems. Corp., Civil Action No. 08-0068-WS-B, 2010 WL 779276, at *1 n.1 (S.D. Ala. Mar. 2, 2010) (collecting cases); see also United States v. Hansen, 262 F.3d 1217, 1234 (11th Cir. 2001) (per curiam). Thus, "[a]lthough the Court must ensure that expert testimony is reliable and admissible, there is nothing in *Kumho Tire* or *Daubert* that requires the Court to conduct a pre-trial evidentiary hearing if the expert testimony is based on well-established principles." United States v. Cooper, 91 F. Supp. 2d 79, 82 (D.D.C. 2000) (citing United States v. Nichols, 169 F.3d 1255, 1263 (10th Cir. 1999) ("pre-trial hearing not required because 'the challenged evidence does not involve any new scientific theory and the testing methodologies are neither new nor novel'")). "'Accordingly, where expert testimony is based on well-established science, the courts generally have concluded that reliability problems go to weight, not admissibility.'" Id. (quoting 29 Charles A. Wright & Victor James Gold, Federal Practice and Procedure § 6266 (1st ed. 1982)).

### 2. *Analysis*

Defendant contends that the expert latent fingerprint identification evidence at issue should be excluded based on a "wholesale attack on latent fingerprint

10

identification evidence in general," United States v. Stone, Case No. 10–20123, 2012 WL 219435, at *3 (E.D. Mich. Jan. 25, 2012), without challenging Hankerson's report or proposed testimony based on his individual reasoning or testing methodology, see generally [Doc. 14]. However, "[s]uch an unspecified challenge to a well-established area of expertise does not warrant a *Daubert* hearing." Stone, 2012 WL 219435, at *3 (citation omitted).

The Eleventh Circuit has "upheld the admission of expert fingerprint evidence under *Daubert*." United States v. Scott, 403 F. App'x 392, 397 (11th Cir. 2010) (per curiam) (unpublished) (citing United States v. Abreu, 406 F.3d 1304, 1307 (11th Cir. 2005) (per curiam)). In fact, courts have admitted expert fingerprint identification testimony based on the same methodology utilized by Hankerson in this case. See United States v. Pena, 586 F.3d 105, 110-11 (1st Cir. 2009) (finding district court did not abuse its discretion in admitting expert testimony based on the ACE-V method); United States v. Baines, 573 F.3d 979, 983, 989-92 (10th Cir. 2009) (same); United States v. Mitchell, 365 F.3d 215, 221-22, 246 (3d Cir. 2004) (same). "Though acknowledging the lack of minimum points and relative subjectivity of certain ACE-V protocols . . . courts have nonetheless found that most of the *Daubert* factors support admitting latent fingerprint identification evidence obtained pursuant to the ACE-V method." Pena, 586 F.3d at 110-11 (citations omitted). Indeed, while "there

is no scientifically determined error rate, the examiner's conclusions must be verified by a second examiner, which reduces, even if it does not eliminate, the potential for incorrect matches," and "[t]he ACE-V method has been used for over 20 years, and is generally accepted within the community of fingerprint experts." Scott, 403 F. App'x at 397-98; see also [Doc. 41-3 at 2 (noting that Hankerson's examination was verified by a second examiner)]. Therefore, despite defendant's arguments to the contrary,[6] circuit precedent and the persuasive reasoning of other courts lead to the conclusion that expert fingerprint identification testimony such as that at issue here is reliable under Daubert and admissible pursuant to Rule 702. See Scott, 403 F. App'x at 397-98; see also Stone, 2012 WL 219435, at *4-5.[7]

---

[6] Defendant relies on a report from the Committee on Identifying the Needs of Forensic Science Community at the National Academy of Sciences entitled "Strengthening Forensic Science in the United States: A Path Forward" to challenge the validity of latent fingerprint identification evidence. See [Doc. 14 at 3-4, 6]. However, courts have rejected this precise argument and have concluded that while there may be a need for further research into fingerprint analysis, this need "does not require courts to take the 'drastic step' of excluding a 'long-accepted form of expert evidence' and 'bedrock forensic identifier.'" Stone, 2012 WL 219435, at *3 (quoting United States v. Crisp, 324 F.3d 261, 268, 270 (4th Cir. 2003)); see also United States v. Cerna, No. CR 08-0730 WHA, 2010 WL 3448528, at *4-5 (N.D. Cal. Sept. 1, 2010) (noting that the "NAS report may be used for cross-examination or may offer guidance for fact-specific challenges," and that the methodology "need not be perfect science to satisfy *Daubert* so long as it is sufficiently reliable"); United States v. Rose, 672 F. Supp. 2d 723, 725-726 (D. Md. 2009).

[7] Furthermore, defendant's concerns regarding the scientific validity and reliability of latent fingerprint identification evidence "go to the weight of the evidence and can be explored on cross-examination and/or through presentation

12

Defendant has not challenged Hankerson's credentials or methodology, see generally [Doc. 14], and the Court finds that there is "no basis to expand on, or depart from, the holdings of numerous courts that latent fingerprint identification evidence is reliable under the five-factor test developed by the Supreme Court in *Daubert*," Stone, 2012 WL 219435, at *4 (citations omitted).  Although defendant requests the Court to hold a Daubert hearing in order to explore these issues, when expert testimony is based upon such well-established principles, a defendant must do more than file a generic motion to merit an evidentiary hearing.  Cooper, 91 F. Supp. 2d at 82.  Defendant's request ignores case law in which numerous courts have permitted fingerprint experts to state their opinions and conclusions.  See United States v. John, 597 F.3d 263, 274-75 (5th Cir. 2010).  Indeed, "[w]here, as here, the challenged form of expertise is familiar, and no novel objection is raised, justice does not require a pre-trial hearing."  Stone, 2012 WL 219435, at *3 (citations omitted).  Thus, defendant's motion is inadequate to merit an evidentiary hearing on the government's proffered expert testimony, and it is hereby **RECOMMENDED** that defendant's motion to exclude the latent fingerprint identification evidence and for a Daubert hearing, [Doc. 14], be **DENIED**.

---

of competing evidence."  Stone, 2012 WL 219435, at *5 (citations omitted); see also Scott, 403 F. App'x at 398; Cooper, 91 F. Supp. 2d at 82 (citation omitted).

**B.      Defendant's Motions to Dismiss, [Docs. 34 & 36]**

Defendant moves to dismiss this case, asserting that the "plaintiff fails to state a claim upon which relief can be granted," the Court "lacks personal and subject matter jurisdiction," and the "Plaintiff [sic] process is insufficient." [Doc. 34]; see also [Doc. 36]. The undersigned understands that defendant is challenging the Court's jurisdiction in these motions. However, "'[a] federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law.'" Paige v. United States, Nos. 8:02-cr-508-T-17MSS, 8:08-cv-1945-T-17MSS, 2009 WL 700659, at *5 (M.D. Fla. Mar. 16, 2009) (quoting United States v. Rendon, 354 F.3d 1320, 1326 (11th Cir. 2003)). "Because the indictment charge[s] a federal offense, this Court ha[s] subject matter jurisdiction," and the Court "gained jurisdiction over [defendant's] person when he was brought before it on an indictment." Id. Thus, defendant's challenges to the Court's jurisdiction are without merit since the criminal indictment in this case charges defendant with violations of federal law, the Court has jurisdiction over the offenses charged, and the defendant has been arrested and brought before the Court on the charges in the indictment. Id. (citations and quotation marks omitted) (quoting United States v. Aguilar, 196 F. App'x 837, 839 (11th Cir. 2006) (per curiam)

(unpublished) (citation omitted)). Accordingly, it is **RECOMMENDED** that defendant's motions to dismiss, [Docs. 34 & 36], be **DENIED**.

**C.     Defendant's Motion to Rescind Not Guilty Plea, [Doc. 37]**

On November 14, 2011, defendant appeared before the undersigned for his arraignment and a plea of not guilty was entered on his behalf since he stood mute. See [Doc. 8]. Defendant has now filed a motion to rescind his not guilty plea in which it appears that he is challenging the Court's entry of the not guilty plea on his behalf, and he requests a hearing. [Doc. 37]. However, "when any person indicted for any offense against the United States, whether capital or otherwise, upon his arraignment stands mute or refuses to plead o[r] answer thereto, it shall be the duty of the court to enter the plea of not guilty on his behalf in the same manner as if he had pleaded not guilty thereto." Johnson v. United States, 225 U.S. 405, 411 (1912) (citation and internal marks omitted); see also United States v. Simpson, No. 05-80137, 2006 WL 2128694, at *1 n.1 (E.D. Mich. July 27, 2006) (citation and internal marks omitted) ("When a defendant stands mute, the court enters a plea of not guilty."). Thus, defendant's challenge to the Court's entry of the not guilty plea on his behalf on November 14, 2011, is without merit, and his motion, [Doc. 37], is therefore **DENIED**.

**D.     Defendant's Motion to Summon Accuser, [Doc. 39]**

Defendant has filed a motion to summon his accuser, stating that he is "unambiguously asserting his right to face his accuser." [Doc. 39]. The Court acknowledges that the "Confrontation Clause is an essential part of the criminal trial's truth seeking function" that "assures the right of the accused, in all criminal prosecutions . . . to be confronted with the witnesses against him," United States v. Nippon Paper Indus. Co., 17 F. Supp. 2d 38, 40 (D. Mass. 1998) (alteration in original) (internal marks omitted); see also Douglas v. Alabama, 380 U.S. 415, 418 (1965), with certain exceptions, Maryland v. Craig, 497 U.S. 836, 844-48 (1990); see also United States v. Yates, 438 F.3d 1307, 1312 (11th Cir. 2006) (en banc). However, "[t]he rights guaranteed by the sixth amendment, including the right to cross-examination, are only applicable to proceedings that constitute critical stages of the trial." Proffitt v. Wainwright, 685 F.2d 1227, 1252 (11th Cir. 1982) (citations omitted). Defendant will have the opportunity at trial to confront the witnesses who are called to testify against him and to otherwise contest the government's evidence. There is nothing before the Court indicating that his rights have been violated in any way or that he has been or will be prevented from exercising his right to confront his accusers at the appropriate time. Accordingly, defendant's motion, [Doc. 39], is **DENIED**.

## II. CONCLUSION

For the foregoing reasons and cited authority, defendant's motion to rescind his not guilty plea, [Doc. 37], and motion to summon his accuser, [Doc. 39], are **DENIED**, and it is hereby **RECOMMENDED** that defendant's motions to dismiss, [Docs. 34 & 36], and his motion to exclude latent fingerprint identification evidence and request for a Daubert hearing, [Doc. 14], be **DENIED**.

There are no other pending matters before the undersigned, and the undersigned is aware of no problems relating to the scheduling of this case.[8]

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 19th day of April, 2012.

Russell G. Vineyard
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[8] As noted, defendant has invoked his right to self-representation, which the Court approved following a Faretta hearing, but his former counsel, Morad Fakhimi of the Federal Defender Program, remains available as standby counsel. See [Doc. 35].